THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TANIS MILICEVIC,

    Plaintiff,

    v.

BAYAMÓN HOTEL COMPANY, LLC, ET AL.,

    Defendants.

Civil No. 22-1202 (ADC)

## OPINION AND ORDER

Before the Court is Universal Insurance Company's ("Universal" or "defendant") motion for summary judgment and statement of proposed uncontested material facts. **ECF Nos. 155** and **156**.

For the reasons stated herein, the Court **GRANTS** defendant's motion for summary judgment and dismisses the case with prejudice.

**I.**    **Procedural background**

On May 4, 2022, Tanis Milicevic ("plaintiff"), field the instant slip-and-fall tort action against Bayamón Hotel Company ("BHC") (as the owner of the hotel) claiming that she suffered damages due to BHC's negligence. **ECF No. 1**. Notably, plaintiff chose not to sue the hotel's "operator" IHE, LLC ("IHE"), or the insurer of both the BHC and IHE, Liberty Insurance ("Liberty"). **ECF No. 1**. The parties agreed to transfer the case to a United States Magistrate

**Civil No. 22-1202 (ADC)**                                                                                                       **Page 2**

Judge for all further proceedings, including judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. **ECF No. 22**.

A year and three months later, BHC moved for leave to file a third-party complaint. **ECF No. 37**. In support of its request for leave, BHC explained that it learned through discovery that two insurance policies were in place, one issued by Liberty and the other one issued by Universal. *Id.*, at 2. BHC further asserted that the insurance policy issued by Liberty "covered"[1] both the hotel and IHE. *Id*. Thus, BHC moved to file only third-party claims against Liberty and IHE. Notably, in its first third-party complaint, BHC did not include Universal as a named third-party defendant. *Id*. The Magistrate Judge granted BHC's request to file a third-party complaint as requested. **ECF No. 39**. Two weeks later, on October 10, 2023, BHC moved to file yet another third-party complain, this time, against Universal. **ECF No. 40**.[2] *Id*. The Magistrate Judge granted the BHC's request to file third-party claims against Universal. **ECF No. 43**.

On December 5, 2023, Liberty filed a motion to dismiss the third-party claims against it. **ECF No. 46.** The Magistrate Judge denied the motion to dismiss. **ECF No. 62**. Thereafter, Liberty filed its answer to the third-party complaint and a crossclaim against Universal.[3] **ECF Nos. 72, 73.** On February 19, 2024, Universal filed a motion to dismiss. **ECF No. 69.**

---

[1] The Court assumes that BHC meant to say that BHC and IHE were both insured under the Liberty policy and that the damages claimed in the complaint fell within the scope of the policy's coverage.
[2] This second request to assert third-party claims was filed after the case management's deadline had elapsed.
[3] Liberty did not explain why it decided to file claims against Universal so late in the proceedings.

On March 7, 2024, plaintiff moved for leave to amend the complaint to include IHE, Liberty, and Universal as co-defendants. **ECF No. 81**. The Magistrate Judge granted plaintiff's request for leave to amend the complaint. **ECF Nos. 84** and **86**. In April 2024, BHC and Liberty filed their answers to the amended complaint. **ECF Nos. 96** and **99**. Two years after the complaint was filed, plaintiff and BHC filed a motion to "substitute," claiming that the "owner" of the hotel was not BHC, but District Hotel Partners, LLC ("DHP" or the "hotel"). **ECF No. 107**.[4] The Magistrate Judge allowed the substitution. **ECF No. 109**.

On May 23, 2024, plaintiff, DHP, IHE (now appearing as Bluhost, LLC), and Liberty filed a motion captioned "Stipulation of dismissal with prejudice." **ECF No. 111**. Therein, all parties except Universal announced that they had reached an agreement and executed a confidential settlement. *Id.*, at 1. Accordingly, plaintiff informed the Court that she "released the appearing Co-Defendants of all liability and will continue her causes of action only against Universal." *Id*. Likewise, Liberty requested dismissal of its crossclaim against Universal, and the hotel dismissed its third-party claims against both Universal and Liberty. *Id.*, at 2. That same day, the Magistrate Judge issued an order noting the voluntary dismissal and ordered that partial judgment be entered with prejudice. **ECF No. 112**. Accordingly, Universal's motion to dismiss and other filings were denied as moot. **ECF Nos. 114-117.**

---

[4] According to the parties, the fact that the relevant insurance policies were issued on behalf of serval entities that owned and operated hospitality centers or hotels threw off the parties and their attorneys as to the correct legal entity. *Id.*, at 2.

Universal filed a motion seeking disclosure of the settlements "to determine its effects in the judgment or [its] own exposure, pursuant to *Szendrey v. Hospicare*, 159 D.P.R. 648 (2003) and its progeny." **ECF No. 119**, at 2. The Magistrate Judge denied Universal's request for disclosure of the settlement information. **ECF No. 126**. Accordingly, Universal filed its answer to the amended complaint. Among other defenses, Universal asserted that plaintiff's release in favor of Universal's insured via settlement "absorb whatever portion of liability that may be assessed." **ECF No. 127** at 19.

Because Universal did not consent to trial jurisdiction by the Magistrate Judge, the case reverted to the undersigned's docket. **ECF No. 131**. On September 30, 2025, Universal filed a motion for summary judgment and a proposed statement of uncontested material facts. **ECF Nos. 155**, **156**. Plaintiff filed an opposition to the motion for summary judgment and a response to Universal's proposed statement of uncontested material facts. **ECF Nos. 157, 158**. Universal replied. **ECF Nos. 160**, **161**. Plaintiff did not move for leave to file a sur-reply.

On December 2025, the Court ordered plaintiff to show cause regarding, *inter alia*, why the case should not be dismissed. **ECF No. 168**. Specifically, the Court ordered plaintiff to argue why the remaining claims were not time-barred or precluded by the collateral source doctrine. *Id*. Both parties filed briefs in response to the Order. **ECF Nos. 168, 169.**

II. **Legal Standard**

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ.*

**Civil No. 22-1202 (ADC)**                                                                                                                                                              **Page 5**

*Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party; it is "material" if it potentially affects the outcome of the case. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). Although the court states the facts in the light most favorable to the party against whom summary judgment is sought, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation modified).

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

It is a "bedrock principle that a party opposing summary judgment must adduce specific evidence sufficient to create a genuine issue of material fact." *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 126 F.4th 773, 777 (1st Cir. 2025). Local Civil Rule 56(c) states, in pertinent part, that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts" in which it "shall admit,

deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civil Rule 56(c). The opposing party may also include a "separate section [of] additional facts" which must comply with Local Rule 56(c). *Id*. Local Civil Rule 56, for its part, provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . .. The court shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." Local Civil Rule 56(c). This is known as an "anti-ferret rule," which is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." *López-Hernández v. Terumo Puerto Rico, LLC*, 64 F.4th 22, 26 (1st Cir. 2023). Litigants ignore the anti-ferret rule at their peril. *Rodríguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 458 (1st Cir. 2022). In the end, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

### III. Discussion[5]

#### A. Local Civil Rule 56 violations

Pursuant to Local Civil Rule 56(c)

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule. (Emphasis added).

If a non-movant improperly controverts the facts proposed by the movant, the court may treat those facts as uncontroverted. *Quintana-Dieppa v. Dep't of Army*, 130 F.4th 1, 8 (1st Cir. 2025) ("If a party does not comply with the rule, the 'district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated.'") (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007)). Because the Court is not required "to ferret through the record to discern whether any material fact is genuinely in dispute[,]" *Rodríguez-Severino v. UTC Aero. Sys.*, 52 F.4th 448, 458 (1st Cir. 2022), the First Circuit "time and again… ha[s] emphasized the importance of complying with that rule." *Id*.

Universal filed its proposed statement of uncontested material fact with 61 short, enumerated paragraphs each with specific references to evidence on the record. **ECF No. 156**.

---

[5] Because the facts of this case are not voluminous, the Court will consolidate the factual findings with the discussion.

Plaintiff filed her response at **ECF No. 157**. Plaintiff admitted Universal's proposed facts in paragraphs 1-21, 27-30, 35, 49-54, and 61 and opposed the rest. *Id*. However, plaintiff did not comply with Local Civil Rule 56(c).

Plaintiff denies Universal's proposed statements of facts in paragraphs 22-26 by lumping them together and giving three general reasons to reject those five statements. **ECF No. 157** at 5-6. The reasons provided by plaintiff do not track or otherwise cross reference the specific proposed statements they are meant to oppose. This practice contravenes Local Civil Rule 56(c), which, in no ambiguous terms, requires that the opposing party "admit, deny or qualify the facts by reference to *each* numbered paragraph of the moving party's statement of material facts") (emphasis added). In any event, the Court cannot assume that plaintiff's purported denials apply to all five statements because Universal's statements in paragraphs 22-26, although related, deal with several different sets of facts. *See* **ECF No. 156** at 3-4.

Moreover, plaintiff's blanket denials of Universal's proposed statements in paragraphs 22-26 do not make reference to the page or paragraphs of the record that support them. For example, plaintiff's "first" paragraph with general denials only includes the following reference to the record: "See the above quotes from Universal's Investigation Report on this Point." **ECF No 157** at 5. Even viewed in the most favorable light to plaintiff, this reference is not rule compliant.

The discussion of the purported reasons to reject Universal's statements also overlooks the rule's length requirement. Local Civil Rule 56(c) is pellucid when it requires a "short and

concise" response. Plaintiff's grouped responses to Universal's statements in paragraphs 22-26 run for almost three full pages in length. Undoubtedly, this is not a short or concise response. *See Cortés-Díaz v. Merk Sharp & Dohme*, Civil No. 19-1611 (ADC), 2021 WL 4513714, at *1 (D.P.R. Sept. 30, 2021).

In light of the multiple and egregious rule violations described above, the Court will deem Universal's statements of proposed material facts in paragraphs 22-26 uncontested. *See Quintana-Dieppa*, 130 F.4th at 8.

Plaintiff's response to Universal's statements in paragraphs 31-33 only direct the reader to her cluster response to paragraphs 22-26, which the Court discussed above. Accordingly, plaintiff's response to Universal's statements in paragraphs 31-33 are in clear violation of Local Civil Rule 56 and will not be taken in consideration for summary judgment purposes. *See Quintana-Dieppa*, 130 F.4th at 8. Universal's statements of proposed material facts in paragraphs 31-33 are uncontested.

Similar to her approach in opposition to Universal's statements in paragraphs 22-26, discussed above, plaintiff provided a single paragraph in response to Universal's statements in paragraphs 36-48. *See* **ECF No. 157** at 7-8. Moreover, plaintiff's purported support for her response statement has no reference whatsoever to the record. Accordingly, Universal's statements in paragraphs 36-48 are uncontested. *See Quintana-Dieppa*, 130 F.4th at 8.

B.     **Uncontested facts**[6]

The following facts are supported by the record, and are either admitted or uncontested:

1. On June 12, 2021, the plaintiff suffered a fall in her room at the Hyatt Place San Juan City Center, in Puerto Rico. SUMF ¶ 1.
2. That morning, plaintiff stepped out of bed and headed to the bathroom, put her right foot on the carpeted floor and stepped on the tiled floor with her left foot and slipped and fell. SUMF ¶ 3.
3. After the fall, the plaintiff noticed the tiled floor was wet. SUMF ¶ 4.
4. Before the fall, plaintiff felt that the carpet was "uncomfortable, spongy." SUMF ¶ 5.
5. Despite noticing mold in the room and the uncomfortable feel of the carpet, plaintiff did not complain to the Hotel during their stay. SUMF ¶ 6.
6. Plaintiff's fall occurred the second morning of her stay. SUMF ¶ 8.
7. The floor in the room was not wet on the first morning of their stay. SUMF ¶ 9.
8. The plaintiff does not know why the floor was not wet on the first morning of the stay (Friday) but was wet on the second morning (Saturday). SUMF ¶ 10.
9. Having arrived at the room on Thursday, plaintiff never saw the air conditioning unit dripping water in the room. SUMF ¶ 11.
10. The day of the accident, plaintiff's husband approached the tiled floor first, shortly before the plaintiff did. SUMF ¶ 12.
11. Plaintiff's husband did not suffer a fall on the floor that morning. SUMF ¶ 13.
12. Plaintiff's husband did not notice the floor wet when he went to the tiled area prior to the plaintiff's fall. SUMF ¶ 14.
13. Plaintiff admits that the wet condition of the floor was "noticeable". SUMF ¶ 15.
14. After her fall, the manager and 4 EMT personnel were also in the room. SUMF ¶ 17.
15. The wet conditions of the floor were immediately noticed by all who came into the room after her fall. SUMF ¶ 18.
16. Plaintiff's husband stayed in the same room and was all dressed up and ready to leave the room prior to the plaintiff walking towards the bathroom and did not suffer a fall. SUMF ¶ 20.

---

[6] Because plaintiff is in agreement as to most of Universal's proposed statements, and because plaintiff failed to properly oppose the majority of the remaining statements, the Court tracks the undisputed material facts as listed in Universal's statement of uncontested material facts *verbatim*. *See* **ECF No. 156**. Aside from those specifically identified herein, the Court draws the facts from the well-pleaded facts of the complaint and the statements of proposed facts submitted by the parties that comply with Local Rule 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Although the Court reviewed every statement submitted by the parties, it will only consider and include in this Opinion and Order those facts that are material and uncontested for purposes of summary judgment as mandated by Fed. R. Civ. P. 56.

17. Plaintiff's only basis to impute actual or constructive knowledge of the Owner regarding the conditions in the room, is after the fall and only with respect to the manager. SUMF ¶ 22.
18. According to plaintiff's testimony under oath, the basis of her claim that the tiles were a "dangerous condition," amounting to a "hidden trap," is that "it was very slippery," "it was like stepping on ice." SUMF ¶ 23.
19. Although plaintiff claims that the Owner knew or should have known that the tile was wet, and/or it was in full control of all the conditions in the room, she has provided no admissible evidence of such knowledge or control by the Owner. SUMF ¶ 25.
20. Plaintiff's claim that the Owner had full control of all conditions in the room at the time, is based on her conclusion that they "own the hotel" "They run the hotel". SUMF ¶ 26.
21. Plaintiff has no personal knowledge about the Owner's role in the room's daily conditions. SUMF ¶ 27.
22. Plaintiff stated that whoever was involved or responsible for running the hotel is responsible for her fall. SUMF ¶ 28.
23. The plaintiff has no personal knowledge about the actual role of the owner over the day-to-day operations. SUMF ¶ 29.
24. The plaintiff has no personal knowledge about the role of the owner and the operator per their agreement. SUMF ¶ 30.
25. The basis for the Plaintiff's claim that the Owner was on notice (actual or constructive) about the conditions in the room, including that the tiles were wet and slippery that morning, is the manager's noting it "when the accident occurred", after the fall. SUMF ¶ 31.
26. Plaintiff has no basis for her allegation that the Owner was aware of the humid conditions in the rooms, other than ownership: "I mean again, it's their hotel, they should be ultimately responsible." SUMF ¶ 32.
27. The allegations in the Amended Complaint regarding the Owner's supposed "full control of all conditions in the room" is without support in any evidence. It is based on mere ownership ("Well, they own the hotel."), access ("They've had access to all the rooms."), on setting the temperature ("They set the temperature."). SUMF ¶ 33.
28. The hotel was owned by District Hotel Partners, LLC, and operated by IHE, LLC. SUMF ¶ 35.
29. The Hotel Management Agreement, by and between District Hotel Partners, LLC, and IHE, LLC, for the Hyatt Place San Juan City Center, defines the roles, control and duties of each party with respect to the property possessed by the Operator. SUMF ¶ 36.

30. The manager, as all other hotel personnel, reported directly to the Operator of the Hotel, not the Owner. SUMF ¶ 37.
31. The Owner, DHP – Universal's insured, had no participation, involvement or role in the daily operations of the Hotel. SUMF ¶ 38.
32. The Owner, DHP – Universal's insured, was not in possession of the hotel premises (including the room where the fall occurred) and was not in control of the hotel premises. Only the Operator, IHE, was in possession and exclusive control of the hotel premises. SUMF ¶ 39.
33. Per the Hotel Management Agreement, the Owner -DHP, Universal's insured, was not charged with the daily operations of the Hotel. SUMF ¶ 40.
34. The Hotel Management Agreement, by and between District Hotel Partners, LLC, and IHE, LLC, for the Hyatt Place San Juan City Center, provides that the Operator (IHE) "shall have discretion and control, free from interference, interruption or disturbance from [the Owner, Universal's insured], in all matters relating to management and operation of the Hotel." SUMF ¶ 41.
35. Among the duties of the Operator, in Section 4.1, the Operator manages all employees and personnel necessary for the operation of the Hotel (4.1(a)), establish rates and services provided to guests (4.1(b)), enter into service contracts for all utilities and maintenance (4.1(c)), procure replacement of operating equipment (4.1(h)), make all routine "alterations, replacements, improvements" "necessary to maintain and operate the Hotel properly" (4.1(i)), plan, execute and supervise routine repairs and maintenance at the Hotel. SUMF ¶ 42.
36. The Hotel Management Agreement provides that the owner (Universal's insured) relinquished possession and control, granting the Operator "the sole and exclusive right … to operate and manage the Hotel, and supervise and direct the Hotel personnel". SUMF ¶ 43.
37. Pursuant to Section 4.5 (Employees), the Operator -not Universal's insured- had complete discretion and control over all personnel matters, and the Owner (Universal's insured) could exercise no authority or interfere with personnel employed by the Operator. SUMF ¶ 44.
38. The Operator had exclusive access and use of the premises, while the Owner had the right to enter the premises "for the purpose of examining or inspecting the Hotel". SUMF ¶ 45.
39. The Hotel Management Agreement, by and between District Hotel Partners, LLC, and IHE, LLC, for the Hyatt Place San Juan City Center, named the operator (IHE) as the party with "the sole and exclusive right" "to operate and manage the Hotel, and supervise and direct the Hotel personnel, during the "Term" of the Agreement. SUMF ¶ 46.

40. The Operator (IHE) had the "discretion and control, free from interference, interruption or disturbance from Owner, in all matters relating to management and operation of the Hotel." SUMF ¶ 47.
41. The duties of the Operator (IHE) included, inter alia: management and operation of the Hotel; supervision and direction of Hotel personnel in all aspects' determination and administration of policies in connection with management; and plan, execute and supervise routine repairs and maintenance at the Hotel. SUMF ¶ 48.
42. Liberty Insurance Company held a Commercial General Liability Policy in favor of the operator of the hotel, IHE, LLC, which named the Owner, District Hotel Partners, LLC, as additional insured. SUMF ¶ 49.
43. The requirement that the operator IHE obtain a policy naming the Owner, DHP, as additional or named insured was a contractual requirement in Section 9.1(b) and 9.2(a) (General Insurance Provisions) of the Hotel Management Agreement, by and between District Hotel Partners, LLC, and IHE, LLC, for the Hyatt Place San Juan City Center. SUMF ¶ 50.
44. The Commercial General Liability Policy issued by Liberty Mutual Insurance Company is made part of the Hotel Management Agreement. SUMF ¶ 51.
45. Universal issued Commercial General Liability Insurance Policy # 09-560-000634630-2/000 in favor of District Hotel Partners, LLC d/b/a Hyatt Place San Juan City Center. SUMF ¶ 52.

**C.    Universal's motion for summary judgment**

Plaintiff concedes that her pending claims hinge on what Universal calls "negligence and premises liability" and agrees that the authorities cited in Universal's memorandum of law control in the disposition of the motion for summary judgment. **ECF No. 158** at 3. Accordingly, the Court will recite the applicable law only briefly.

Generally, in order to prevail in a tort case a plaintiff must prove: "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 547 (1st Cir. 2019) (quoting *Woods-Leber v. Hyatt*

*Hotels of P.R., Inc.*, 124 F.3d 47, 50 (1st Cir. 1997)); *see* P.R. Laws Ann. t. 31, §10801. Failure to prove any of these elements will bring plaintiff's claim to an end.

Cases filed under Puerto Rico's general tort statute[7] take many forms. For example, "[c]ases premised on the existence of a dangerous condition often arise from a 'slip-and-fall,' caused by a wet or slippery floor, and involve a claim that the business owner was negligent in permitting the condition to remain because it is foreseeable that a wet floor is likely to cause injury." *Vázquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 50 (1st Cir. 2007). As plaintiff concedes, that is precisely the case here. *See* **ECF No. 158** at 3. In such cases, the First Circuit requires "an affirmative showing by the plaintiff that the defendant was negligent. This showing, in turn, requires a demonstration that the defendant has either actual or constructive knowledge of a dangerous condition." *Mas v. United States*, 984 F.2d 527, 530 (1st Cir. 1993); *see also Vázquez-Filippetti*, 504 F.3d at 50 ("claims based on allegedly dangerous conditions on commercial property (premises liability claims)[,] require a showing that the defendant knew of or should have foreseen the risks created by the condition.")). This requirement is essential because, "a business owner is not the absolute insurer of the safety of its patrons[.]" *Torres v. KMart Corp.*, 233 F. Supp. 2d 273, 278 (D.P.R. 2002) (cleaned up).

---

[7] *See* P.R. Laws Ann. t. 31, §10801. The current version of the Puerto Rico Civil Code, Act No. 55 of June 1, 2020, codified as 31 L.P.R.A. § 5311 *et seq.*, entered into force on November 28, 2020, repealing the previous 1930 Code. *See Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc.*, 79 F.4th 1, 5 n. 1 (1st Cir. 2023).

In this case, Universal has argued and proffered several uncontested facts to establish that plaintiff lacks evidence on the hotel's knowledge element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by… pointing out… that there is an absence of evidence to support the nonmoving party's case."). Universal successfully asserted among other key facts, that not one person staying in the room (including plaintiff and her husband) alerted the hotel staff or any other person of any condensation, moist, or liquid in the room's tiled floor before accident. *See* Uncontested Facts ¶¶ 4-6. Moreover, the uncontested facts show that plaintiff has no evidence to prove that the operator and much less the owner of the hotel knew of the dangerous condition. For example, it is uncontested that Universal's insured (the owner), had no participation, involvement, or role in the daily operations of the hotel. SUMF ¶ 38. Moreover, the manager, as did all other hotel personnel, reported directly to IHE (the operator), not Universal's insured. SUMF ¶ 37. Plaintiff does not point to any evidence supporting a finding that IHE or Universal's insured had any notice of the purported dangerous conditions in the room.

More importantly, the undisputed facts show that the basis for plaintiff's claim that the owner was on notice (actual or constructive) about the conditions in the room, including that the tiles were wet and slippery the morning of the accident, is the manager's noting such conditions *after* the fall. SUMF ¶ 31. Indeed, plaintiff's case for knowledge entirely rests on the

ownership theory[8] (*i.e.* "I mean again, it's their hotel, they should be ultimately responsible." SUMF ¶ 32), which, as explained before, gets plaintiff nowhere because "a business owner is not the absolute insurer of the safety of its patrons[.]" *Torres v. KMart Corp.*, 233 F. Supp. 2d at 278. Universal was able to expose plaintiff's lack of evidence of constructive or actual knowledge of either IHE or the hotel's ownership of any dangerous condition in the room. *See Celotex Corp. v. Catrett*, 477 U.S. at 325; *see also Pierluisi v. Coopervision Pharmaceuticals, Inc.*, 694 F. Supp. 1038, 1042 (D.P.R. 1988) ("summary judgment filed by defendant should be granted where it is evident that there is an absence of evidence to prove an essential element of the plaintiff's claim.").

Thus, plaintiff's lack of evidence as to the hotel's knowledge of the dangerous condition (condensation and resulting moist in tiled floor) forecloses on plaintiff's right to assert a tort claim against defendant. Indeed, as eloquently stated by a sister Court "[f]ailure to prove any element [of a tort claim] is fatal…." *Cruz-Ramos v. Toro Verde Corp.*, Civil No. 21-1078 (MAJ), 2023 WL 4144982, at *5 (D.P.R. June 22, 2023), *aff'd*, No. 23-1639, 2024 WL 504056 (1st Cir. Feb. 8, 2024). Thus, the Court need not go any further.

This result is neither unfair nor unheard of. *Calderón-Ortega v. U.S.*, 753 F.3d 250, 254 (1st Cir. 2014) ("Stripped of rhetorical flourishes, the plaintiff's real complaint is that the district court

---

[8] The Court briefly notes that plaintiff's theory of ownership liability is precisely that, a theory of liability, not a negligence standard. Because plaintiff concedes that her claims are negligence-based (as opposed to, for example, strict liability), asserting that the remaining defendant is the insurer of the "owner" of the hotel does absolutely nothing to show that plaintiff has admissible evidence to create a triable issue as to that party's negligence.

did not hold the defendant liable as an insurer of the plaintiff's safety. But even though an owner or occupier of commercial premises must exercise due care for the safety of its patrons, it is not liable in tort without a showing of fault." (citing *Vázquez-Filippetti*, at 49)).

IV. **Conclusion**

For the reasons stated above, Universal's motion for summary judgment at **ECF No. 155** is **GRANTED**. Accordingly, the case is **DISMISSED** with prejudice. Clerk of Court shall enter judgment.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 5th day of February, 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**